# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## Civil Action No.: 3:17-CV-398

| | |
|---|---|
| BOJANGLES' INTERNATIONAL, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HARDEES' RESTAURANTS, LLC and<br>CKE RESTAURANTS HOLDINGS, INC.,<br><br>　　　　　　　　　　Defendants. | **VERIFIED COMPLAINT**<br><br>**(Jury trial demanded)** |

Plaintiff Bojangles' International, LLC ("Plaintiff"), a Delaware limited liability company, states as its Complaint against Defendants, Hardees' Restaurants, LLC and CKE Restaurants Holdings, Inc., (collectively the "Defendants") as follows:

## NATURE OF THE ACTION

1.　This is an action at law and in equity for trademark infringement, false advertisement, unfair competition, and unfair and deceptive trade practices. Defendants are advertising, promoting, and selling goods using Plaintiff's proprietary and federally registered trademarks. Plaintiff has not authorized the advertising, promotion, or sale of Defendants' goods bearing the infringing marks. Defendants' infringing marks are likely to cause confusion and to deceive consumers.

## PARTIES

2.　Plaintiff is a Delaware limited liability company with its principal place of business at 9432 Southern Pine Boulevard, Charlotte, North Carolina. Plaintiff is engaged in the ownership, operation, and franchising of quick-service restaurants all under a family of federally registered trademarks.

3. Upon information and belief, Defendant Hardee's Restaurants, LLC ("Hardee's") is a Delaware limited liability company registered to do business in the State of North Carolina and is engaged in the ownership, operation, and franchising of quick-service restaurants.

4. Upon information and belief, Hardee's is a wholly owned subsidiary of CKE Restaurants Holdings, Inc.

5. Upon information and belief, Hardee's does substantial business in the State of North Carolina and in this judicial district.

6. Upon information and belief, Defendant CKE Restaurants Holdings, Inc. ("CKE") is a Delaware corporation authorized to do business in the State of North Carolina and engaged in the ownership, operation, and franchising of quick-service restaurants, including Hardee's.

7. Upon information and belief, CKE does substantial business in the State of North Carolina and in this judicial district (the "District").

## JURISDICTION AND VENUE

8. This is an action for trademark infringement and false advertisement (direct and, alternatively, contributory and vicarious), unfair competition and false advertisement, direct, contributory, and vicarious, under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and unfair and deceptive trade practices and unfair competition under N.C. Gen. Stat. §75-1.1.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and the principles of supplemental jurisdiction.

10. This Court has personal jurisdiction over the Defendants because Defendants have committed the unlawful conduct complained of herein, in part, within this District; because the unlawful conduct causes injury, in part, within this District; because Defendants regularly conduct or solicit business within this District; because, upon information and belief, Defendants

rent or own property within this District; because Defendants engage in other persistent courses of conduct or derive substantial revenue from goods used or consumed within this District; because Defendants have directed marketing activity into the State of North Carolina and this District with the manifest intent of engaging in business within this District; and because Plaintiff's claims arise out of Defendants' activities within the State of North Carolina and within this District.

11. Venue is proper in this District and this Court pursuant to 28 U.S.C. §§1391 (b) and (c).

## FACTUAL BACKGROUND
### Plaintiff's Trademarks

12. Plaintiff is the franchisor of the BOJANGLES'® restaurant system, which features distinctive, flavorful chicken served with fresh buttermilk biscuits and biscuit sandwiches filled with spicy chicken filets, seasoned sausage or steak, country ham, eggs, and cheese, served hot and fresh all day, every day.

13. Plaintiff franchises to others the right to operate restaurants identified by the BOJANGLES'® trademarks and logos which are designated for use exclusively in connection with the operation of BOJANGLES'® restaurants. Franchisees pay an ongoing license fee, in addition to other consideration, to own and operate BOJANGLES'® restaurants.

14. Plaintiff's trademarks include the following:

The Cajun Family of Trademarks:

a. The word mark CAJUN FILET BISCUIT (the "CAJUN BISCUIT Mark"), first used in commerce by Plaintiff by at least 1986, and registered on October 20, 2015 in International Class ("IC") 30 for chicken biscuit sandwiches. A true and correct copy of this Registration No. 4,835,122 (the "'122 Registration") is attached as **Exhibit A.** The CAJUN

BISCUIT Mark was registered under Section 2(f) of 15 U.S.C. 1052(f) on the basis of acquired distinctiveness or secondary meaning. The '122 Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the CAJUN BISCUIT Mark and the '122 Registration, the validity of the CAJUN BISCUIT Mark and the '122 Registration, and of Plaintiff's exclusive rights to use the CAJUN BISCUIT Mark in commerce on and in connection with the goods and services recited in the '122 Registration.

  b. The word mark BOJANGLES' CAJUN SPICED CHICKEN (the "CAJUN SPICED CHICKEN Mark"), first used in commerce by Plaintiff on May 1, 1977, and registered on November 10, 1981 in IC 29 for fried chicken, prepared potatoes, cole slaw, corn-on-the-cob, and pinto beans for consumption on or off the premises, and in IC 30 for apple turnovers, biscuits (sausage, chicken, ham, steak, butter and jelly), rolls, rice, tea and coffee for consumption on or off the premises. A true and correct copy of this Registration No. 1,177,496 (the "'496 Registration") is attached as **Exhibit B.** The '496 Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the CAJUN SPICED CHICKEN Mark and the '496 Registration, the validity of the CAJUN SPICED CHICKEN Mark and the '496 Registration, and of Plaintiff's exclusive rights to use the CAJUN SPICED CHICKEN Mark in commerce on and in connection with the goods and services recited in the '496 Registration. The '496 Registration is incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and constitutes conclusive evidence of Plaintiff's exclusive rights to use the CAJUN SPICED CHICKEN Mark in connection with the goods recited in the '496 Registration.

  c. The word mark BOJANGLES' CAJUN PINTOS (the "CAJUN PINTOS Mark"), first used in commerce by Plaintiff on May 25, 1981, and registered on November 30, 1982 in IC 29 for pinto beans for consumption on or off the premises. A true and correct copy of

this Registration No. 1,218,514 (the "'514 Registration") is attached as **Exhibit C.** The '514 Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the CAJUN PINTOS Mark and the '514 Registration, the validity of the CAJUN PINTOS Mark and the '514 Registration, and of Plaintiff's exclusive rights to use the CAJUN PINTOS Mark in commerce on and in connection with the goods and services recited in the '514 Registration. The '514 Registration is incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and constitutes conclusive evidence of Plaintiff's exclusive rights to use the CAJUN PINTOS Mark in connection with the goods recited in the '514 Registration.

    d.  The word mark IT'S CAJUN SPICED (the "CAJUN SPICED Mark"), first used in commerce by Plaintiff on May 1, 1977, and registered on October 27, 1981 in IC 29 for fried chicken, prepared potatoes, cole slaw, corn-on-the-cob, and pinto beans for consumption on or off the premises and in IC 30 for apple turnovers, biscuits (sausage, chicken, ham, steak, butter and jelly), rolls, rice, tea and coffee for consumption on or off the premises. A true and correct copy of this Registration No. 1,175,371 (the "'317 Registration") is attached as **Exhibit D.** The '317 Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the CAJUN SPICED Mark and the '317 Registration, the validity of the CAJUN SPICED Mark and the '317 Registration, and of Plaintiff's exclusive rights to use the CAJUN SPICED Mark in commerce on and in connection with the goods and services recited in the '317 Registration. The '317 Registration is incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and constitutes conclusive evidence of Plaintiff's exclusive rights to use the CAJUN SPICED Mark in connection with the goods recited in the '317 Registration.

(The CAJUN BISCUIT Mark, the CAJUN SPICED CHICKEN Mark, the CAJUN PINTOS Mark, and the CAJUN SPICED Mark are collectively referred to as the "CAJUN Marks.")

The GOTTAWANNANEEDAGETTAHAVA Mark.

e. The word mark GOTTAWANNANEEDAGETTAHAVA (the "GOTTA Mark"), first used in commerce by Plaintiff by at least September 29, 2003, and registered on November 15, 2011 in IC 43 for restaurant services, namely preparing food for consumption on or off the premises. A true and correct copy of this Registration No. 4,056,307 (the "'307 Registration") is attached as **Exhibit E**. The '307 Registration is valid and subsisting and constitutes prima facie evidence of Plaintiff's ownership of the GOTTA Mark and the '307 Registration, the validity of the GOTTA Mark and the '307 Registration, and of Plaintiff's exclusive rights to use the GOTTA Mark in commerce on and in connection with the goods and services recited in the '307 Registration. The '307 Registration is incontestable in accordance with 15 U.S.C. §§ 1065 and 1115(b) and constitutes conclusive evidence of Plaintiff's exclusive rights to use the GOTTA Mark in connection with the goods recited in the '307 Registration.

(The CAJUN Marks and the GOTTA Mark are collectively referred to as the "Proprietary Marks.")

15. Plaintiff has used the Proprietary Marks consistently and prominently in interstate commerce and they are valid, protectable marks.

16. Plaintiff has made a substantial investment in the advertisement, marketing, and promotion of the Proprietary Marks and through extensive and continuous use in interstate commerce, the Proprietary Marks have come to be associated with Plaintiff and identify Plaintiff as the source of the goods offered in connection with the Proprietary Marks.

17. The Proprietary Marks are valuable assets of Plaintiff and have substantial goodwill associated with them.

18. Upon information and belief, Defendants operate or franchise approximately 23 restaurants in this District under the Hardee's name.

**Defendants' Wrongful Acts**

19. Upon information and belief, sometime in June, 2017, Defendants, on behalf of themselves and their franchisees, began promoting a chicken biscuit (the "Infringing Good") using the mark "Cajun Chicken Fillet Biscuit" (the "Cajun Infringing Mark").

20. In connection with the sale, offering for sale, distribution and advertising in commerce of the Infringing Good, Defendants began a marketing campaign that included, upon information and belief, social media, billboards, point of sale information including signage, reader boards, and menu boards, print and television ads, and website references. The marketing campaign uses the Cajun Infringing Mark prominently.

21. In the marketing campaign to promote the Infringing Good, Defendants also used the mark "Gotta Wanna Needa Hava" (the "Gotta Infringing Mark") prominently.

22. The Cajun Infringing Mark and the Gotta Infringing Mark are collectively referred to as the "Infringing Marks."

23. For example, the website located at www.hardees.com featured the Infringing Good and used the Infringing Marks on at least June 29, 2017 and July 4, 2017. See **Exhibit F.**

24. Since receipt of the cease and desist letter from Plaintiff (Paragraph 35 below), Defendants have changed the name of the Infringing Good on the website located at www.hardees.com from "Cajun Fillet Chicken Biscuit" to "Cajun Chicken Biscuit." See **Exhibit G.**

25. At least on or before June 29, 2017, Defendants ran a sponsored ad on Facebook using the Infringing Marks to promote the Infringing Good. See **Exhibit H.**

26. At least on or before June 29, 2017, Defendants ran a sponsored ad on Instagram using the Infringing Marks to promote the Infringing Good. See **Exhibit I.**

27. At least on or before June 29, 2017, Hardee's tweeted an ad using the Infringing Marks to promote the Infringing Good. See **Exhibit J.**

28. Upon information and belief, sometime in June or July, 2017, Defendants caused billboard ads to be placed in North Carolina using the Cajun Infringing Mark to promote the Infringing Good.

29. Within Hardee's stores, including in this District, menu boards use the Cajun Infringing Mark to promote the Infringing Good. See **Exhibit K.**

30. On the exterior of Hardee's stores, including in this District, point of purchase signs use the Cajun Infringing Mark to promote the Infringing Good. See **Exhibit L.**

31. Within the State of North Carolina and within this District, Defendants are running television ads using the marks "Cajun Fillet Chicken Biscuit" and, upon information and belief, "Cajun Chicken Biscuit" to promote the Infringing Good.

32. Upon information and belief, all marketing undertaken by Defendants' franchisees must be approved in advance by Defendants or one of them.

33. Upon information and belief, stores operated by Defendants or their franchisees are using the Infringing Marks to sell and promote the Infringing Good. See, e.g. **Exhibits K** and **L.**

34. Defendants have used and continue to use the Infringing Marks in connection with their quick-serve restaurants with the intention of misappropriating the goodwill that

Plaintiff has established in the Proprietary Marks and misleading the consuming public into believing that their restaurants or goods are affiliated with Plaintiff.

35. Upon discovering Defendants' wrongful acts, Plaintiff informed Defendants of its rights in the Proprietary Marks and demanded that they take immediate steps to remove all uses of the Infringing Marks and cease sales of the Infringing Good. See **Exhibits M** and **N.**

36. Defendants have failed to cease using the Infringing Marks or selling the Infringing Good.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement—15 U.S.C. §1114 (All Defendants)**

37. The allegations of paragraphs 1 through 36 are realleged and incorporated by reference.

38. Without the authorization or consent of Plaintiff, Defendants have used the Infringing Marks to promote and sell the Infringing Good in or affecting interstate commerce.

39. Defendants' unauthorized use of the Infringing Marks and sale of the Infringing Good in interstate commerce and in conjunction with the sale of the Infringing Good constitute trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a).

40. Defendants' use in commerce of the Infringing Marks and sale of the Infringing Good are likely to cause confusion, or to cause mistake or deceive consumers.

41. Defendants have been specifically warned in writing to cease their unauthorized use of the Infringing Marks but nonetheless have continued to use them.

42. Upon information and belief, the aforesaid acts were undertaken willfully and with the intention of causing confusion, mistake or deception, and profiting therefrom.

43. Accordingly, Plaintiff is entitled to recover all damages sustained by it, all of Defendants' profits as a result of the infringement, and all costs of the action, including attorneys' fees.

44. In addition, the acts of Defendants have caused irreparable harm to Plaintiff and, unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiff, for which Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**SECOND CLAIM FOR RELIEF**
**Federal Unfair Competition/False Designation of Origin—15 U.S.C. §1125 (All Defendants)**

45. The allegations of paragraphs 1 through 44 are realleged and incorporated by reference.

46. Defendants' conduct as alleged above constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that consumers are likely to believe that the Infringing Good is provided by Plaintiff, or originates from Plaintiff, or is licensed, sponsored, or approved by Plaintiff, or that there is some affiliation or connection between Plaintiff and Defendants.

47. Defendants have been specifically warned in writing to cease their unauthorized use of the Infringing Marks but nonetheless have continued to use them.

48. The public is likely to be confused, deceived or otherwise misled by Defendants' knowing and willful unauthorized use of the Infringing Marks.

49. Defendants' conduct constitutes unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50. The acts of Defendants have caused irreparable harm to Plaintiff and, unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

51. Plaintiff has sustained actual damages as a result of Defendants' actions, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Unfair and Deceptive Trade Practices—N.C. Gen. Stat §75-1.1 (All Defendants)**

52. The allegations of paragraphs 1 through 51 are realleged and incorporated by reference.

53. Defendants' conduct as alleged above was and is in and affecting commerce in the State of North Carolina.

54. Defendants' conduct as alleged above, constitutes unfair and deceptive acts and practices and unfair methods of competition in violation of the provisions of N.C. Gen. Stat. §75-1.1 *et seq.*

55. Plaintiff has suffered actual injury and has been damaged by Defendants' unfair and deceptive acts.

56. Pursuant to N.C. Gen Stat. §75-1.1 *et seq.,* Plaintiff is entitled to treble damages and attorney's fees for Defendants' unfair and deceptive acts.

**THIRD CLAIM FOR RELIEF (IN THE ALTERNATIVE)**
**Contributory Trademark Infringement and Contributory False Advertising**
**(Defendant CKE)**

57. The allegations of paragraphs 1 through 56 are realleged and incorporated by reference.

58. Upon information and belief, CKE, with full knowledge of Plaintiff's rights in the Proprietary Marks has knowingly permitted and encouraged Hardee's to use the Infringing

Marks in the promotion of the Infringing Good thus contributing to the infringement of Plaintiff's trademark rights and in false advertisement, which is likely to cause confusion among consumers.

59. The use of the Infringing Marks by Hardee's in association with CKE and through its control is likely to deceive or cause confusion among consumers as to whether Plaintiff is the source of Defendants' products, or is sponsored by or affiliated with Defendants.

60. CKE has provided aid and material contribution to the violations of the Lanham Act by Hardee's.

61. CKE is contributorily liable for the infringing conduct of Hardee's, including its false advertising.

62. Upon information and belief, CKE's contributory actions are willful and reflect its intent to exploit the goodwill of the Proprietary Marks.

63. Plaintiff has been damaged by CKE's contributory actions in an amount to be proven at trial.

64. Plaintiff has been irreparably harmed by CKE's contributory actions and absent injunctive relief will continue to be unless such conduct is enjoined.

65. Plaintiff has no adequate remedy at law for the foregoing wrongful conduct.

### FOURTH CLAIM FOR RELIEF (IN THE ALTERNATIVE)
### Vicarious Trademark Infringement (Defendant CKE)

66. The allegations of paragraphs 1 through 65 are realleged and incorporated by reference.

67. Upon information and belief, CKE has the right and ability to control the use by Hardee's of the Infringing Marks or terms confusingly similar thereto with respect to the sale or marketing of goods.

68. The use by Hardee's of the Infringing Marks or terms confusingly similar thereto is likely to cause confusion among consumers and constitutes infringement of Plaintiff's rights in the Proprietary Marks.

69. Upon information and belief, CKE and Hardee's have joint ownership or control over the Infringing Good and the use of the Infringing Marks.

70. Upon information and belief, CKE receives a direct financial benefit from Hardee's unauthorized use of the Infringing Marks or terms confusingly similar thereto and sale of the Infringing Good.

71. CKE is therefore vicariously liable for the infringing conduct of Hardee's, including its false advertisement.

72. CKE's vicarious actions are willful and reflect CKE's intent to exploit the goodwill of the Proprietary Marks.

73. Plaintiff has been damaged by CKE's vicarious actions in an amount to be determined at trial.

74. Plaintiff has been irreparably harmed by CKE's vicarious actions and absent injunctive relief will continue to be unless the conduct is enjoined.

75. Plaintiff has no adequate remedy at law for the foregoing wrongful conduct.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. That this Court issue a preliminary and permanent injunction prohibiting Defendants, their officers, directors, agents, principals, divisions, sales representatives,

employees, franchisees, subsidiaries, affiliates, successors and assigns, and all persons acting by, through, under, or in active concert or participation with or controlled, either directly or indirectly by Defendants from using, directly or contributing to the use of, the Infringing Marks or any substantially similar variations thereof, including specifically "CAJUN CHICKEN FILLET BISCUIT," "CAJUN CHICKEN BISCUIT," and "GOTTA WANNA NEEDA GETTA HAVA" in connection with the offering, selling, packaging, labeling, advertising, promoting, marketing, selling, or distribution of any quick-service food products, or any other related goods in the United States, and from otherwise infringing the Proprietary Marks;

B. That this Court enter a preliminary and permanent injunction requiring Defendants to remove all use of the Infringing Marks or any substantially similar variations thereof, including specifically "CAJUN CHICKEN FILLET BISCUIT," "CAJUN CHICKEN BISCUIT," and "GOTTA WANNA NEEDA GETTA HAVA" from their advertisements, exterior and interior signage, point of sale materials, social media, websites, and all other uses in any material or medium;

C. That Defendants cease the sale, marketing, and promotion of the Infringing Good;

D. That Defendants be ordered to file with the Court and serve on counsel for Plaintiff within 10 days after entry of any preliminary injunction issued a report setting forth in detail, under oath, the manner in which Defendants have complied with the injunction;

E. That Defendants be ordered to produce an accounting for all profits derived by Defendants from their unlawful acts;

F. That Plaintiff have and recover from Defendants an award of such monetary remedies in an amount sufficient to compensate Plaintiff for losses it has sustained as a

consequence of Defendants' unlawful acts, as well as Defendants' profits attributable to the infringements, the larger of which should be trebled pursuant to 15 U.S.C. § 1117;

G.      That the Court deem this to be an exceptional case, and award to Plaintiff its reasonable attorney fees incurred in prosecuting its claims under the Lanham Act, pursuant to the provisions of Lanham Act, Section 35, 15 U.S.C. § 1117;

H.      That Plaintiff have and recover from Defendants its damages, including treble damages, costs and attorney's fees, sustained by reason of Defendants' unfair and deceptive acts and unfair methods of competition, pursuant to N.C. Gen. Stat. §75-1.1 *et seq;*

I.      That all costs of this action be assessed against Defendants; and

J.      All such other and further relief as this Court may deem just and proper.

Respectfully submitted this 7th day of July, 2017.

ALEXANDER RICKS PLLC

  /s/ Alice C. Richey
Alice C. Richey
N.C. Bar No. 13677
Telephone: (980) 335-0720
alice@alexanderricks.com

Lucas D. Garber
N.C. Bar No.  47765
Telephone: (980) 498-6099
lucas@alexanderricks.com

4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone: (704) 365-3656
Facsimile:  (704) 365-3676

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

## **VERIFICATION**

    I, K. Randall Poindexter, Senior Vice President of Marketing for Bojangles' International, LLC., being first duly sworn, state that I have read the foregoing Complaint and know the contents thereof, and that the information contained therein is true to my knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

                                                                           K. Randall Poindexter

Sworn to and subscribed before
me this 27 day of July, 2017.

_Christine Shedrow_
Official Signature of Notary

_Christine Shedrow_
Notary's printed or typed name

My Commission Expires: October 26, 2020

(Official Seal)

> CHRISTINE SHEDROW
> Notary Public, North Carolina
> Cabarrus County
> My Commission Expires
> October 26, 2020