**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:17-CV-398**

| | |
|---|---|
| **BOJANGLES' INTERNATIONAL, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **HARDEE'S RESTAURANTS LLC** and **CKE RESTAURANTS HOLDINGS, INC.**, <br><br> Defendants. | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S REQUEST FOR EXPEDITED PRELIMINARY INJUNCTION HEARING AND IN SUPPORT OF DEFENDANTS' MOTION FOR DISCOVERY AND ENTRY OF SCHEDULING ORDER** |

## I. BOTTOM LINE UP FRONT

Bojangles' International, LLC's ("Bojangles'") request for an expedited hearing next week should be denied because:

- Defendants Hardee's Restaurants LLC ("Hardee's") and CKE Restaurants Holdings, Inc. ("CKE," and, collectively with Hardee's, "Defendants") would be severely prejudiced by such an expedited hearing, which would deny them the opportunity to develop and present critical evidence in opposition to Bojangles' claims; and

- Bojangles' would not be meaningfully prejudiced by the denial of an expedited hearing, in that: (a) this is not the first time Hardee's has sold product under the challenged names "Cajun Chicken Fillet Biscuit" and "Cajun Chicken Biscuit" in Bojangles' markets – rather it is the sixth time over eight years – and Bojangles' has never objected until now; and (b) Hardee's, as part of its pre-litigation effort to amicably resolve this dispute despite viewing Bojangles' claims as meritless, has already committed to limit its advertising of the challenged product and ultimately remove the challenged product from the market altogether by September 20. As a result of this commitment, all off-premises advertising will have been removed by this upcoming Monday (July 17)[1] and the challenged product will be removed within a matter of weeks (without a preliminary injunction, or even a lawsuit).

---

[1] This includes the removal of all references to branding that incorporates the term "Cajun." Hardee's previously removed all references to "Gotta Wanna Needa Getta Hava" before the lawsuit was filed.

Bojangles' trademark infringement claims currently are premised on the unsupportable theory that it has nationwide exclusive rights to the term "Cajun" in the restaurant space. This position, if valid, would have serious adverse implications for the entire restaurant industry in the United States, not just for Defendants.

Apparently recognizing its position is legally – and fatally -- flawed, Bojangles' current tactic is to rush to a Preliminary Injunction hearing in one week from filing its Motion, which would prevent Defendants from garnering any evidence or preparing any meaningful response. This is particularly objectionable given Bogangles is seeking the extraordinary relief of preliminary enjoining Hardees' from use of the word "Cajun" on any of its products, and Bojangles' seeks to have this injunction apply nationwide. Rather than providing the Court with a sufficient record in which to perform a thorough evaluation of the mandatory factors when considering a Preliminary Injunction, i.e., (1) likelihood of success on the merits; (2) whether Bojangles' would suffer irreparable harm; (3) balance of the equities; and (4) the public interest, such a rush to a hearing would mean the Court effectively would be left to consider only the materials presented to the Court by Bojangles'.

Bojangles' request for a hearing next week should be denied. As discussed above, while Defendants would be significantly prejudiced by the granting of this request, Bojangles' would not be prejudiced by the denial in any meaningful way. In addition, Bojangles' is not likely to win on the merits. Defendants will win this case, but need sufficient time to prepare. Defendants are confident that the outcome of this litigation will be that Hardee's and the rest of the restaurant industry will be confirmed as non-infringers and may sell Cajun chicken biscuits, the term "Cajun Filet Biscuit" that is used by Bojangles' will be recognized as not protectable as
2

a trademark (because it is merely descriptive or, more likely, generic), and Bojangles' federal registration for "Cajun Filet Biscuit" will be canceled.

Defendants, too, are desirous of having a prompt resolution of this matter – but after both parties have had a fair and reasonable time to prepare. Because this is not a case that warrants a preliminary injunction, Defendants recommend an expedited schedule governing the entire case that allows all parties a meaningful opportunity to develop their evidence, with an eye toward a trial on the merits in the early Winter, *e.g.*, December 2017.

Alternatively, if the Court believes that a preliminary injunction hearing is appropriate, Defendants request that the Court exercise its discretion to allow for a short but meaningful period for necessary discovery and retention of experts limited to the issues for such a hearing. *See CIENA Corp. v. Jarrard*, 203 F.3d 312, 315 (4th Cir. 2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion and 30 days in which to file motion); *Motel 6 Operating, L.P. v. Gaston County*, 2008 U.S. Dist. LEXIS 81645, *16-*17 (W.D.N.C. Sep. 18, 2008) (Whitney, J.) (ordering parties to recommence expedited discovery for preliminary injunction purposes and scheduling preliminary injunction hearing after close of expedited discovery).[2] *See also* Fed. R. Civ. P. 26(d) Advisory Committee Comment (recognizing that it may be appropriate to allow expedited discovery when a party seeks injunctive relief). If the hearing is to be held, Defendants suggest the following ambitious schedule, with a hearing date in late August:

---

[2] *See also K.G. Holding Corp. v. Union Bank*, 56 Fed. Appx. 111, 114 (4th Cir. 2003) ("The parties engaged in expedited discovery in preparation for the . . . hearings on the competing motions for preliminary injunction."); *Dan River, Inc. v. Unitex, Ltd*., 624 F.2d 1216, 1220 (4th Cir. 1980)(noting that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing").

3

- July 19 – Deadline for Defendants to file answers and counterclaims, for parties to serve written discovery including document requests, and for Bojangles' to designate experts;
- July 26 – Deadline for parties to respond to written discovery and produce documents;
- July 31 – August 4 – Deadline for fact witness depositions and deposition of Bojangles' experts;
- August 9 – Deadline for Defendants to file oppositions to motion for preliminary injunction and to designate experts;
- August 16 – Deadline for Bojangles' to file reply in support of motion for preliminary injunction, to depose Defendants' experts and to designate rebuttal experts;
- August 23 – Deadline for Defendants to depose rebuttal experts, if any;
- August 28 – Deadline for Defendants to file sur-reply in opposition to motion for preliminary injunction; and
- Hearing Date: at the Court's convenience after Defendants file sur-reply.

## II. DEFENDANTS NEED TIME TO PREPARE THE CASE ON THE MERITS

Bojangles' claims are flawed on their face. For its one-two "punch," the best it can muster is that Bojangles' has exclusive rights to "Cajun Filet Biscuit" . . . because it has exclusive nationwide rights to the term "Cajun". This is baseless as a matter of common sense, let alone as a matter of law.

Bojangles' has already conceded that the terms "Cajun Filet Biscuit" and "Cajun" are at most inherently descriptive (Defendants submit they are actually generic). (Complaint, ¶ 12.a). Bojangles' therefore is forced to argue that the terms have purportedly acquired distinctiveness. However, Bojangles' has never offered meaningful evidence of acquired distinctiveness – not during the nearly 30 years it claims to have used the mark without bothering to file for a trademark registration, not during its prosecution of its application for a registration in 2015, and not in its affidavits filed in support of its motion for a preliminary injunction here. Bojangles', no doubt, plans to proceed at a preliminary injunction hearing by simply relying on the issuance of a trademark registration for "Cajun Filet Biscuit." But while this registration may give Bojangles' a presumption of having an actionable trademark, the presumption is rebuttable and

4

will be rebutted.  Defendants, however, will need reasonable time to gather evidence to meet this burden.[3]

Defendants further will need time to develop evidence to show that Bojangles' cannot meet its burden of proving a likelihood of confusion.  Confusion is particularly unlikely in that, as of this coming Monday (July 17), there will be no Hardee's advertising off-premises at issue in this case.

Defendants expect that there will be substantial evidence to support their position that confusion is unlikely.  One category of evidence will be prior use.  Bojangles' is not the only restaurant that uses "Cajun."  Many others use "Cajun" as well, both within and outside the quick service restaurant space.  (Declaration of Bruce Frazer, Senior Vice President, Product Marketing, ¶ 6 ("Frazer Decl.") (attached hereto)).  Indeed, many of these third parties used the term long before Bojangles' filed for a trademark registration in late 2014.  (Frazer Decl., ¶ 6).  Defendants need time to gather such evidence.  Defendants need time to gather other evidence of non-infringement as well – including potentially consumer surveys.

The above evidence cannot be gathered in a week.  In the interest of fairness and due process, Defendants ask the Court for a reasonable amount of time to prepare their case.

### III.  BALANCING OF HARMS DOES NOT JUSTIFY AN EXPEDITED HEARING

An expedited preliminary injunction hearing also is unnecessary because, while Defendants would be severely prejudiced by this, Bojangles' would not be meaningfully harmed at all.

---

[3] The fact that Bojangles is not also asking for time to develop evidence on acquired distinctiveness further speaks volumes as to just how weak even Bojangles regards its case.  Also, after Defendants meet their burden of producing evidence to challenge the presumption created by the registration, the burden of ultimate persuasion on the issue of acquired distinctiveness shifts back to and remains with Bojangles. *See Retail Services Inc. v. Freebies Publishing*, 364 F.3d 535, 542-43.

First, Bojangles' cannot credibly claim to be suffering reputational harm by the current offering because Bojangles' never objected when Hardee's offered the same product with the same name on at least five separate limited time offerings in the past eight years. Previously, Hardee's made the following commercial offerings:

1. "Cajun Chicken Biscuit" from July to August 2009;
2. "Cajun Chicken Biscuit" from September to December 2009;
3. "Cajun Chicken Fillet Biscuit" and "Cajun Chicken Fillet Sandwich" from May to June 2013;
4. "Cajun Chicken Fillet Biscuit" from October – December 2014; and
5. "Cajun Chicken Fillet Biscuit" in February 2017.

(Frazer Decl., ¶¶ 8-16).

Each of these offerings ran in Bojangles' markets, and many of them ran in Charlotte, North Carolina, where Bojangles' is based. (*Id.*). To the knowledge of Defendants, Bojangles' never objected to any of these offerings, which span a period of seven-plus years. (*Id.*). Having allowed these to run for so long, Bojangles' can hardly complain that it would be prejudiced by allowing the instant offer to run its course.

This is particularly true because, as part of its pre-litigation effort to amicably resolve this matter, Hardee's has committed to end the instant offer on September 20. (Frazer Decl., ¶ 18, 20). Hardee's further has committed to ending much of its advertising efforts well before then. For example, all billboards that had been posted for the offer have already been removed. (*Id.*). All advertising on the Internet also has been removed, both from Hardee's website and on social media. (*Id.*). Although television and radio media-buy commitments did not allow Hardee's to remove TV and radio spots immediately after Hardee's received Bojangles' complaint letter, Hardee's will have removed all of these spots by July 16 as well. (*Id.*). Thus, as of this

6

Case 3:17-cv-00398-MOC-DSC   Document 14   Filed 07/14/17   Page 6 of 9

upcoming Monday, July 17, 2017, all off-site advertising will have been removed. (*Id.* at ¶ 19). And, again, the offer will end on September 20 (the date by which it estimated it would have had a reasonable opportunity to sell off previously purchased product).[4]

In committing to voluntarily take these actions, Hardee's believed it was being more than reasonable in seeking to avoid litigation. However, now that Bojangles' has seen fit to institute litigation and, indeed, to seek a nationwide monopoly on "Cajun" in the restaurant space, Hardee's understandably believes it is important to vigorously contest this litigation, for itself and the rest of the restaurant industry.

## IV. CONCLUSION

For the reasons set forth above, Defendants Hardee's and CKE submit that a preliminary injunction hearing is unnecessary because of the lack of prejudice to Bojangles', Hardee's removal of all off-premises advertising, and Hardee's commitment to end the current offering in a matter of weeks. To the extent the Court chooses to schedule a hearing, however, Defendants submit that Bojangles' proposed request for a hearing next week be denied and the Court enter a schedule proposed by Defendants herein, which would afford the parties a fair opportunity to conduct limited discovery and present arguments as required by the extraordinary relief of the preliminary injunction requested by Bojangles'.

---

[4] Hardee's is willing to refrain from reintroducing the product using the challenged branding until the Court has fully adjudicated this case.

7

Respectfully submitted this 14th day of July, 2017

                                              */s/* Lance A. Lawsom
                                              Lance A. Lawson (N.C. Bar No. 23835)
McNair Law Firm, P.A.
101 South Tryon Street
Suite 2610
Charlotte, NC 28280
704-347-1170 (telephone)
704-347-4467 (facsimile)
llawson@mcnair.net

*Attorneys for Defendants Hardee's Restaurants LLC and CKE Restaurants Holdings, Inc.*

8

Case 3:17-cv-00398-MOC-DSC   Document 14   Filed 07/14/17   Page 8 of 9

## CERTIFICATE OF SERVICE

      I hereby certify that on July 14, 2017, I electronically filed Hardee's Restaurants LLC and CKE Restaurants Holdings, Inc.'s Memorandum in Opposition to Plaintiff's Request for Expedited Preliminary Injunction Hearing and in Support of Defendants' Motion for Discovery and Entry of Scheduling Order with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to the attorneys of record.

This the 14th day of July, 2017.

                                          */s/* Lance A. Lawson
                                          Lance A. Lawson (N.C. Bar No. 23835)
                                          McNair Law Firm, P.A.
                                          101 South Tryon Street
                                          Suite 2610
                                          Charlotte, NC 28280
                                          704-347-1170 (telephone)
                                          704-347-4467 (facsimile)
                                          llawson@mcnair.net

                                          *Attorneys for Defendants Hardee's Restaurants LLC and CKE Restaurants Holdings, Inc.*

9

Case 3:17-cv-00398-MOC-DSC   Document 14   Filed 07/14/17   Page 9 of 9