IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:17-CV-398

| | |
|---|---|
| BOJANGLES' INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HARDEES' RESTAURANTS, LLC and CKE RESTAURANTS HOLDINGS, INC.,<br><br>Defendants. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY, ENTRY OF A SCHEDULING ORDER, AND DENIAL OF PLAINTIFF'S MOTION FOR AN EXPEDITED HEARING** |

Plaintiff, Bojangles' International, LLC, hereby responds to Defendants' Motion for Discovery, Entry of a Scheduling Order and Denial of Plaintiff's Motion for an Expedited Hearing ("Defendants' Motion") as follows:

Plaintiff filed its Verified Complaint on July 7, 2017 alleging claims against Defendants for trademark infringement, false advertising and unfair competition, violations of the North Carolina Unfair and Deceptive Trade Practices Act, and alternative claims for vicarious and contributory liability. [DKT 1]. On July 11, 2017, Plaintiff filed its Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") [DKT 5] and has provided notice of the same to Defendants. Plaintiff has requested that this Court grant an expedited hearing on its Motion, specifically a hearing sometime during the week of July 17, 2017.

Defendants' Motion asks the Court not to grant an expedited hearing, suggesting a hearing sometime after August 28, 2017, and asks the Court to permit it to engage in expedited discovery. Plaintiff has asserted strong claims for trademark infringement with respect to its family of CAJUN Marks, and specifically its "Cajun Filet Biscuit" Mark (the "Cajun Marks") and its

"GOTTAWANNANEEDAGETTAHAVA" Mark (the "Gotta Mark") and has alleged irreparable harm as a result of Defendants' willful infringing conduct. Plaintiff believes it is entitled to an expedited hearing on its Motion and that Defendant's Motion should be denied.

Defendants maintain that they should be provided an opportunity to engage in discovery because they will be "severely prejudiced by such an expedited hearing." *See* Defendants' Memorandum in Opposition to Plaintiff's Request for Expedited Preliminary Injunction Hearing and in Support of Defendants' Motion for Discovery and Entry of Scheduling Order at p. 1 ("Defs. Memo."); Defs. Memo at p. 2 ("Defendants would be significantly prejudiced by the granting of this request"); and Defs. Memo at p. 5 ("Defendants would be severely prejudiced"). Defendants offer absolutely no evidence to support this conclusion.

Defendants then state that "Bojangles would not be meaningfully prejudiced by the denial of an expedited hearing." Defs. Memo. at pp. 1, 2, 5. Defendants offer two reasons for this assertion. First, apparently Defendants have previously infringed Plaintiff's Cajun Marks. Defs. Memo at p. 1, Affidavit of Bruce Frazer ("Frazer Aff.") at ¶¶ 9, 11, 13, 15, 17. Defendants cite to five occasions when they had a "limited-time offer" ("LTO") of the "'Cajun Chicken Biscuit'" in certain markets (*id.*) and conclude that because of those prior uses of the Cajun Marks and the fact that they were not sued by Plaintiff on those occasions, Plaintiff will not be "meaningfully prejudiced by the denial of an expedited hearing." Defs. Memo at p. 1. The fact that Defendants were not sued for prior infringements, some lasting less than one month, suggests that there was no widespread marketing of those LTOs in the same manner as engaged in during this current LTO. *See* Verified Complaint at ¶¶ 20, 23, 25 - 33 (setting forth the marketing campaign used by Defendants to promote the Infringing Good for this current LTO). It is also a fact Defendants can argue to this Court at the appropriate time. But it is not a fact relevant to whether or not Plaintiff

00620-003/00074963-1

is entitled to an expedited hearing on the Motion or a fact relevant to a request for expedited discovery.

Second, Defendants state their intention to cease sales of the Infringing Good altogether by September 20, 2017.[1] (Frazer Aff. at ¶ 20). Of course, this end date does not mean that Plaintiff will not be "meaningfully prejudiced," only that the Defendants' actions causing irreparable harm to the Plaintiff will cease on September 20, 2017. It is nonsensical that a cessation of the infringing activities almost two months away should deny Plaintiff the right to a hearing on its Motion. The purpose of a preliminary injunction is to stop irreparable harm; every day and every hour only results in more harm. Defendants' suggestion is a schedule which runs to almost the end of the current LTO period, rendering Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ineffective and permitting Defendants to complete the intended sales of the Infringing Good. During the interim, while the irreparable harm continues to occur, Defendants propose conducting "necessary discovery and retention of experts limited to the issues for such a hearing." See Defs. Memo. at p. 3, citing cases in which expedited discovery for a preliminary injunction was granted.[2] However, Defendants provide no specifics as to what the discovery will be. In their proposed order, they state that the parties (1) will serve "written discovery including document requests," (2) designate experts; (3) take "fact witness depositions;" (4) take "corporate

---

[1] Defendants suggest this commitment is an effort to resolve the matter "pre-litigation." However, the Frazer Affidavit shows that this current use of the Cajun Marks is just another "limited-time offer" of the biscuits similar to the other limited-time offers made in prior years. The end date of September 20, 2017 is simply the end of this current LTO. See Frazer Aff. At ¶¶ 9 (55 day LTO), 11 (83 day LTO), 13 (39 day LTO), 15 (69 day LTO), 17 (20 day LTO), 19 (91 day LTO); *see also,* Defs. Memo at p. 7 (September 20 is "the date by which [Defendants] estimated [they] would have had a reasonable opportunity to sell off the previously purchased product.").

[2] Defendants cite to *CIENA Corp. v. Jarrard*, 203 F.3d 312 (4th Cir. 2000) in support. There, the 4th Circuit did not disturb the entry of the preliminary injunction, but remanded to the district court with instructions to allow expedited discovery sufficient to enable Defendant to file a motion to dissolve the preliminary injunction. It does not appear from the case that the Defendant requested expedited discovery at all.

depositions;" and (5) depose experts prior to a hearing on Plaintiff's Motion for Preliminary Injunction. [DKT 13-1]

Rule 26(d)(1) of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except…when authorized by these rules, by stipulation, or by court order." Fed.R.Civ.P. 26(d)(1). The Comments to the Rules of Civil Procedure recognize that it may be appropriate to allow expedited discovery when a party seeks preliminary injunctive relief. Fed.R.Civ.P. 26(d) Advisory Committee Comment (1993 Amendment). A specific standard for evaluating a request for expedited discovery is not set out in the rules and the Fourth Circuit has not established a standard. *Lewis v. Alamance County,* 2015 WL 2124211, *1 (M.D.N.C. May 6, 2015) (citing *L'Occitane, Inc. v. Trans Source Logistics, Inc.,* No. WMN-09-CV-2499, 2009 WL 3746690, at *2 (D.MD. Nov. 2, 2009)). Federal district courts have typically applied either a preliminary injunction standard or a "good cause" standard. *See Dimension Data North America, Inc. v. NetStar-1, Inc.,* 226 F.R.D. 528, 531 (E.D.N.C. 2005) (citations omitted).

The Eastern District of North Carolina adopted the "good cause" or "reasonableness" standard in *Dimension Data. See id.,* ("a standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules of Civil Procedure); *see also Chryso, Inc. v. Innovative Concrete Solutions of the Carolinas, LLC*, 2015 WL 12600175 at *3 (E.D.N.C. June 30, 2015) ("After reviewing the relevant case law, the court determines that it is more appropriate to apply the reasonableness-based test when a party seeks to conduct discovery prior to the Rule 26(f) conference in order to prepare for a preliminary injunction hearing."). The Middle District in *Lewis,* declined to adopt either test. *See Lewis,* 2015 WL 2124211 at *2 ("the Court need not

determine which test to apply, because it agrees with Defendant ACDSS that Plaintiff has failed to satisfy either standard.") Plaintiff has found three cases in the Western District of North Carolina which applied the "good cause" test in considering a motion for expedited discovery. *See Gaming v. W.G. Yates & Sons Construction Company,* 2016 WL 3450829 (W.D.N.C. June 16, 2016) (good cause existed for expedited discovery where answers filed, Rule 26(f) conference had occurred, discovery narrowly tailored to obtain information that might be lost if discovery not allowed, and irreparable harm shown by delaying an examination of a structural component of a hotel garage); *Carter v. Ozoeneh,* 2009 WL 1383307 at *3 (W.D.N.C. May 14, 2009) ("Generally speaking, the Court may authorize expedited discovery upon a showing of good cause.") (citing *Dimension Data)*; *United Healthcare Services, Inc. v. Richards,* 2009 WL 4825184, at *1, 2 (W.D.N.C. December 2, 2009) ("good cause" not shown where proposed discovery does not appear "narrowly tailored" to obtain information relevant to a possible request for preliminary injunction, plaintiff only provided "generalized allegations" and no evidence regarding the irreparable harm it might incur, citing *Dimension Data*).

The reasonableness or good cause test considers four factors: (1) the procedural posture of the case; (2) whether the discovery at issue is narrowly tailored to obtain information that is probative to the preliminary injunction analysis; (3) whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference; and (4) whether the documents or information sought through discovery will be unavailable in the future or are subject to destruction.[3] *Chryso,* 2015 WL 12600175 at *3 (citing *Dimension Data,* 226 F.R.D. at 532).

---

[3] This factor does not apply here and Defendants have not alleged any potential loss of evidence.

With respect to the first factor, the procedural posture of the case, while limited expedited discovery may be appropriate prior to a hearing on a preliminary injunction, it is not appropriate here. Defendants acknowledge that the Infringing Good is being offered on an LTO basis – only until September 20, 2017. Plaintiff asserts that since at least June 2017, it has suffered irreparable harm as a result of Defendants' infringing acts and will continue to suffer such harm until an injunction is entered *See Verified Compl.* at ¶¶ 44, 50, 55, 64, and 74. By Defendants' own admission, the infringing activities will stop on September 20, 2017. As Defendants note, this was communicated to Plaintiff prior to the filing of the Complaint (Frazer Aff. at ¶ 20). However, it is not acceptable to Plaintiffs that Defendants continue to sell the Infringing Good for any amount of time and certainly not through September 20, 2017. Expedited discovery merely provides Defendants with the full opportunity to complete its LTO sales period while causing continued irreparable harm to Plaintiff. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 939 (4th Cir. 1995) ("irreparable injury regularly follows from trademark infringement"); *Arkansas Best Corp. v. Carolina Freight Corp.,* 60 F. Supp. 2d 517, 519 (W.D.N.C. 1999) ("Defendants' unauthorized use of Plaintiff's federally registered service mark presents an undeniable threat to Plaintiff's reputation and goodwill and, therefore, creates imminent irreparable harm."); *see also* 5. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:47 (4th ed. 2008) ("trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation"). Further, given that the infringing acts will cease on September 20, 2017 for the duration of this lawsuit (Defs. Memo at p.7, footnote 4), a delay due to expedited discovery will permit Defendants to realize the full value of those infringing acts and deny Plaintiff an opportunity to stop resulting the irreparable harm. The soon to expire LTO period and the Defendants' admission that "as of Monday, July 17, 2017,

00620-003/00074963-1                                            6

Case 3:17-cv-00398-MOC-DSC   Document 15   Filed 07/15/17   Page 6 of 11

all off-site advertising will have been removed," (Frazer Aff. at ¶ 20), demonstrates that its investment in the Infringing Good is coming to an end. Plaintiff is in an entirely different position because it has been using the Cajun Marks every hour of every day for at least the past 30 years and specifically selling the Cajun Filet Biscuit, one of its most popular menu items, continuously during those years. (Declaration of W. Randall Poindexter at ¶ 10) ("Poindexter Decl") [DKT 7].[4] Plaintiff's association with and use of the Cajun Marks does not come to an end on September 20, 2017 and it has requested an expedited hearing in order to protect its significant long-term investment.

The second factor in the good cause analysis requires that a party seeking expedited discovery in connection with a request for a preliminary injunction, must narrowly tailor any discovery to "focus on information believed to be probative to the preliminary injunction analysis." *Chryso,* 2015 WL 12600175 at *4 ("citing *Dimension Data,* 226 F.R.D. at 532). While Defendants state in their Memorandum that there should be a "short but meaningful period for necessary discovery and retention of experts limited to the issues for such a hearing," (Defs. Memo at p. 3), Defendants do not tailor the proposed discovery requests at all, much less narrowly tailor them. The proposed order refers to written discovery including document requests, fact witness depositions, corporate depositions, and expert depositions. This is the full discovery that is to take place after the Rule 26(f) conference, not the limited and narrowly tailored discovery that may be appropriate prior to the conference.[5] Because Defendants have failed to narrowly tailor their

---

[4] Mr. Poindexter notes in his declaration that he will provide further testimony regarding the percentage of sales of the biscuit and marketing and advertising costs upon entry of a protective order. (Poindexter Decl. at ¶ 10). Plaintiff has provided Defendants with a proposed protective order to consider.

[5] Inexplicably, despite Defendants' protestations that Plaintiff is rushing toward an injunction hearing, that Defendants "will win this case" and ultimately cancel Plaintiff's registered trademark, Defendants also seek to expedite a full trial on the merits. Plaintiff does not believe it is the appropriate time to determine the length of full discovery and the timeline for a trial on the merits; that is part of the Rule 26(f) conference which has yet to occur. Perhaps Defendants believe a proposed early trial date will provide a counterbalance to their attempt to prevent Plaintiff from being heard on its preliminary injunction motion prior to the expiration of the LTO period. However, given Defendants' stated

discovery requests, their motion should not be granted. *See Chryso*, 2015 WL 12600175 at *5 ("Because Chryso's proposed discovery is, on the whole, overbroad, this factor does not counsel in favor of granting Chryso's motion."); *see also, St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (applying good cause test in denying request for expedited discovery and noting that "[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad.").

The third factor in the good cause analysis is "whether the requesting party would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference." *Chryso,* 2015 WL 12600175 at *3. Defendants do not assert that they will be irreparably harmed by waiting until after the Rule 26(f) conference to engage in discovery. Instead, they simply assert in their Memorandum that they need time in the "interest of fairness and due process." (Defs. Memo at p. 5) Given that the Infringing Good is an LTO product intended only to be sold through September 20, 2017, there will be no off-premises advertising of the product after July 16, 2017, and the cajun chicken biscuit is not a staple of the Hardee's brand, there cannot be irreparable harm to Defendants by the denial of expedited discovery.[6] The Defendants have set forth no connection between the need for expedited discovery and any harm to them. Indeed, given the nature of the LTO, Defendants cannot demonstrate they will suffer any appreciable harm if an injunction is granted, much less if they are denied expedited discovery. *See Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 581 (M.D.N.C. 2011) ("It is hard for [Defendant] to contend it will suffer any appreciable harm if it is prohibited from marketing a product it contends

---

history of limited use of the Cajun Marks (approximately 8 ½ months use over a period of eight years) and its stated willingness to refrain from using the Cajun Marks until there is a full adjudication on the merits, an early date for a full trial is certainly not necessary to preserve the rights of either party since there will be no infringing conduct occurring after September 20, 2017.

[6] Defendants were able to change billboards in a 24-hour time period so a lengthy amount of time is not needed to stop their infringing activities. *See* Poindexter Decl. at ¶ 20.

it no longer intends to sell."). Furthermore, any lost sales to Defendants if this Court enters a preliminary injunction can be remedied through a damages award at the conclusion of a trial on the merits, if Defendants are successful. *See Chryso,* 2015 WL 12600175 at *5 ("As the damages Chryso may suffer during this time period are quantifiable and can be remedied through a damages award…they have not shown irreparable harm of such an extent to require expedited discovery.").

Conversely, Plaintiff has made a long-term investment in the Cajun Marks and will suffer harm to its reputation and a loss of goodwill – the type of harm that is considered irreparable. *See Ex-Cell Home Fashions, Inc. v. Carnation Home Fashions, Inc.,* 2010 WL 2812876 at *1 (W.D.N.C. 2010) (loss of control over the goodwill associated with a trademark is "by its very nature irreparable"). Additionally, as a franchisor, Plaintiff sells a franchise system that includes the license of its trademarks and concomitant goodwill to its franchisees. Defendants assert that "this is not a case that warrants a preliminary injunction" (Defs. Memo at p. 3) and that instead there should simply be an "expedited schedule governing the entire case that allows all parties a meaningful opportunity to develop their evidence." *Id.* Defendants are entitled to a meaningful opportunity to develop their evidence and that is the discovery that occurs following the Rule 26(f) conference. Defendants have failed to demonstrate that they will be harmed by the denial of expedited discovery or the granting of an expedited hearing of Plaintiff's Motion for Preliminary Injunction. Instead, they state that they need time to "prepare their case." *Id.* at p. 5*; See Lewis*, 2015 WL 2124211 at *2 (In denying request for expedited discovery, court noted that "Plaintiff thus appears to argue, in a circular fashion that, should the Court deny her access to expedited discovery, she would suffer the harm of not having access to expedited discovery…[her] filings otherwise fail to address the issue of irreparable harm as it concerns access to expedited discovery…"). Similarly, Defendants have alleged no irreparable harm if they are not permitted

expedited discovery. The time to "prepare their case" will come following the parties' Rule 26 (f) conference.

Because the Defendants are not entitled to expedited discovery, the Defendants' will also suffer no prejudice if the Plaintiff is provided an expedited hearing. The irreparable harm to Plaintiff is occurring every day that Defendants are permitted to engage in their infringing conduct and Plaintiff's request for an expedited hearing during the week of July 17, 2017 should be granted.

Respectfully submitted this 15th day of July, 2017.

>
> ALEXANDER RICKS, PLLC
>
> /s/Alice C. Richey_____
> Alice Carmichael Richey
> N.C. State Bar No. 13677
> Telephone: (980) 335-0720
> Email: alice@alexanderricks.com
>
> Lucas D. Garber
> N.C. Bar No. 47756
> Telephone: (980) 498-6099
> Email: lucas@alexanderricks.com

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR DISCOVERY, ENTRY OF A SCHEDULING ORDER AND DENIAL OF PLAINTIFF'S MOTION FOR AN EXPEDITED HEARING ON PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

This 15th day of July, 2017.

**ALEXANDER RICKS, PLLC**

/s/Alice C. Richey
Alice Carmichael Richey
N.C. State Bar No. 13677
4601 Park Road, Suite 580
Charlotte, NC 28209
Telephone: (980) 335-0720
Facsimile: (704) 365-3676
Email: alice@alexanderricks.com

*Attorneys for Plaintiff*