UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00398-MOC-DSC

| | |
|---|---|
| **BOJANGLES' INTERNATIONAL, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| **CKE RESTAURANTS HOLDINGS, INC.** | ) |
| **HARDEES' RESTAURANTS, LLCS,** | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the court upon initial review of plaintiff's Motion for Temporary Restraining Order (TRO) and Preliminary Injunction (#5) and defendants' responsive Motion (#13) for Discovery and Entry of a Scheduling Order. Having considered the Motions and reviewed the pleadings, the court enters the following Order.

**I.    Background**

Both plaintiff and defendants operate quick-service restaurants around the country. The court is familiar with the products of both companies, especially given the number of locations of both chains within this District and long hours spent on the road.

On the court's menu today is a case about fried chicken, biscuits, and Cajun spices. Plaintiff asks the court to institute the extraordinary remedy of injunctive relief related to the purported infringement of its trademarks related to its fried chicken products. The trademarks involved in this case include CAJUN FILET BISCUIT and the wordmark or phrase GOTTA WANNA NEEDA GETTA HAVA (hereinafter "Gotta").

-1-

Plaintiff Bojangles'[1] alleges that defendants (collectively "Hardee's") infringed on its protected trademarks by labeling a fried chicken filet[2] with Cajun spices with a name close to "Cajun Chicken Fillet Biscuit." (#6) at 8. In connection with the advertising of this product and its placement on Hardee's menus, the word or words "Gotta Wanna Needa Hava" were allegedly used.[3] (#1) at 7.

Plaintiff Bojangles' now seeks a temporary restraining order (TRO), preliminary injunction, and expedited hearing in order to enjoin Hardee's from using the purported infringing marks. See (#5). Defendants object to this injunctive relief and have filed a Motion for Discovery and a Scheduling Order, see (#13), and plaintiff has objected. (#15). For the reasons that follows, the emergency relief of a TRO will be denied, limited discovery will be allowed, and a hearing on the plaintiff's request for a preliminary injunction will be set not less than 30 days from entry of this Order.

## II. Applicable Standards

Applications for issuance of a TRO are governed by Fed. R. Civ. P. 65(b)(1), which provides as follows:

---

[1] The court recognizes that these national companies may also have other trademarks not at issue in this case, particularly in the names of their businesses and restaurants (*e.g.* Bojangles'® and Hardee's®). Acknowledging the existence of other marks, the court will dispense with any "™" or "®" marks in this opinion or further capitalization of such marks.

[2] The court acknowledges that "filet" and "fillet" are alternate spellings, with the Bojangles' mark a "Cajun Filet Biscuit" and the Hardee's product a "Cajun Chicken Fillet Biscuit." While the court takes no sides as to the proper spelling of the meat cutlet, others may disagree. See Jan Freeman, *Fillet or Filet? The Strange, Edible Landscape of Food Words*. BOSTON GLOBE. 22 May 2011.

[3] The court is aware of Plaintiff's contention the "Gotta" trademark may be substantially similar with or without spaces, as in "Gottawannaneedagettahava" and "Gotta Wanna Needa Getta Hava." Compare Verified Complaint (#1) at 6 with (#1) at 14. While the breathlessness of using this phrase without spaces may emphasize the sense of urgency in this call to action, the court acknowledges that both companies would want more customers to want, need, get, or have their respective fried chicken products.

-2-

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Id. The Court notes that "the issuance of an *ex parte* temporary restraining order [here, *parte,* inasmuch as defendant has responded] is an emergency procedure and is appropriate only when the applicant is in need of immediate relief." Wright and Miller, 11A FED. PRAC. & PROC. CIV. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit, No. 3:13-CV-00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F. 3d 411 (4th Cir. 1999)). In assessing such factors, plaintiff must demonstrate that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public interest. League of Women Voters of N. Carolina v. N. Carolina, 769 F.3d 224, 236 (4th Cir. 2014), cert. denied, 135 S. Ct. 1735, 191 L. Ed. 2d 702 (2015) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

**II. Discussion**

The court has closely reviewed the Verified Complaint (#1) and the parties' Motions (#5 and #13). The court will review the appropriate factors *seriatim*.

### i. Likelihood of Success on the Merits

Much like the flavors of a good chicken biscuit, the issues in this case operate on multiple levels. The court must make a determination as to whether plaintiff is likely to succeed on the underlying *Lanham Act* claim of trademark infringement. Before doing so, the court must ascertain the nature of the marks at issue.

Plaintiff alleges two classes of trademarks that were allegedly infringed. The first set of trademarks involves a family of items labeled "Cajun," including spiced chicken, chicken fillet biscuit, beans, and other "Cajun spiced" food products. (#1) at 4-6. The second trademark category involves the "Gotta" mark, an arbitrary made-up word or phrase. Plaintiff's marks are registered, which create a rebuttable presumption that the marks are valid and enforceable.

As the name would suggest, rebuttable presumptions can be rebutted. The burden is on the defendant to provide sufficient evidence to rebut a presumption of exclusive use. Plaintiff claims that certain trademarks, including those related to its Cajun spices, spiced chicken, and pinto beans are incontestable. (#1) at 4-5; (#6) at 2. Importantly, the claimed "Cajun Filet Biscuit" mark is not incontestable. (#6) at 2. The Cajun Filet Biscuit mark is the operative mark involved in this case. In the end, this is not a case about beans—it's about biscuits.

While an incontestable mark may not be challenged as merely descriptive, <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 196 (1985), a mark that is not "incontestable" may indeed be contested. Such is the case here with the Cajun spiced chicken biscuit. At this preliminary stage the court cannot agree with the contention that Bojangles' trademark encompasses all possible combinations of Cajun spices, biscuits, and fried chicken. The court is aware that other quick-service restaurants offer spiced chicken products, including Zaxby's, Popeye's, and Church's,

among others. See also (#14-1) at 1 & 4. As an aside, the court is also aware that its colleagues on the federal bench in Louisiana may have much to say about Cajun fried chicken products.

The "Gotta" mark is more abstract, as a made-up word or phrase unrelated to the product it is used to promote. This distinctive mark receives greater protection against infringement. See Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996). The court is familiar with other distinctive marks in the fried chicken market, such as "Finger Lickin' Good," and appreciates how important it can be for fried chicken purveyors to point customers' to their regional delicacies through use of distinctive and catchy made up words.  In apparent recognition of it used, the filings indicate that Hardee's has agreed to remove all branding related to "Cajun" by September 20, 2017 and has already removed the allegedly infringing "Gotta" phrase from all of its promotional materials. (#14) at 1. Mentioning without deciding, the fact that the "Gotta" mark has already been removed raises a potential justiciability issue as to that mark that the parties are invited to address in briefing the preliminary injunction issue.

As for the "Cajun" family of marks, the court appreciates the need for further evidence as to the potential of consumer confusion between one Cajun chicken fillet biscuit and another. Even with Bojangles' incontestable marks as to its Cajun spices, pinto beans, and Cajun spiced chicken, the operative mark at issue here is that of the Cajun Filet Biscuit. At this point – which is without the benefit of discovery -- the court is not prepared to conclude that Bojangles' is likely to succeed on the merits as to that operative mark.

The *Lanham Act* places the burden on the plaintiff to prove (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale,

-5-

distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers. 15 U.S.C. § 1114(a); Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012). In analyzing the likelihood of consumer confusion, courts examine at least nine factors, including:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir.2009).

Mindful that the court is operating without the benefit of discovery, the limited record before the court suggests that the plaintiff is likely to succeed on the first prong inasmuch as it has registered marks. While the plaintiff has a strong case regarding the "Gotta" mark, its arguments related to Cajun spiced biscuits appear more problematic. The "Gotta" mark is distinctive, and a jury could reasonably find that defendants' use of a phrase similar or nearly identical to "Gotta" was an imitation of the protected mark; indeed, a reasonable jury could find that such use was outright lifting unless some evidence exists showing Hardee's prior use. Even without the benefit of discovery, the court could reasonably find that the defendants' use of a phrase similar to "Gotta" would confuse consumers. The court will not speculate as to whether Hardees' removed this promotion knowing its *Lanham Act* position was unfavorable, but the court appreciates and encourages amicable resolution.

Assuming the strength of plaintiff's Lanham Act arguments regarding the "Gotta" mark, Hardee's, as mentioned, already removed this offending promotion. (#14) at 1. To that end, the court's injunctive relief (if granted) would be simply to enjoin Hardees' from doing what it has

already done and has ceased to do. As discussed below, a TRO shall issue when the movant is in need of immediate relief. Any relief the court could issue would not be "immediate relief" as to the "Gotta" mark, especially with the understanding that the offending promotion will not be reintroduced during the *pendency of this lawsuit.* (#14) at 7.

The plaintiff's *Lanham Act* arguments regarding its chicken biscuit with Cajun spices are more in doubt. While Bojangles' unique blend of Cajun spices, its buttery biscuit, and fried chicken are well known to the court, its mark is not arbitrary—it describes what the product is: a fried chicken filet (or fillet) with Cajun spices within a biscuit. Even if another quick-service restaurant were to use a phrase similar to "Cajun Chicken Filet Biscuit," it simply is what it is—a description of the product. The court is, however, mindful of other marks denoting a regional flavor or supposed origin, such as "Kentucky Fried Chicken." Assuming that plaintiff could prove the second and third prongs of the *Lanham Act* inquiry, its position on the fourth prong—the "likelihood of confusion" test—is unlikely to succeed. The court could, however, be convinced otherwise with the benefit of discovery and further evidence. In reviewing the nine factors regarding "likelihood of confusion," some factors are in plaintiff's favor, such as the similarity of the two quick-service restaurants, but a plurality of factors, namely the strength or distinctiveness of plaintiff's mark, militate toward an unfavorable decision for plaintiff as this early stage.

Plaintiff may argue that the Cajun family of marks related to its spices and beans are also in contention in this action. The *Lanham Act* case against the Cajun family of marks outside the biscuit sandwich is also unlikely to succeed. Plaintiff does have valid marks, even uncontestable marks, related to "Bojangles' Cajun Spiced Chicken," "Cajun Pintos," and "It's Cajun Spiced" (#6) at 2, and contends that Hardee's use has also put these marks at issue. Assuming that the first

*Lanham Act* prong is satisfied, the plaintiff has not yet shown that these marks were infringed by defendants. The offending product was a chicken biscuit sandwich with Cajun spices. Bojangles' does not have a monopoly on all Cajun spices. The closest marks are "Bojangles' Cajun Spiced Chicken" (#1-B) and "It's Cajun Spiced" (#1-D). In examining these marks, the court concludes that the second and third prongs on the *Lanham Act* test are not satisfied. The mark in (#1-B) is for "Bojangles' Cajun Spiced Chicken," not all Cajun spiced chicken that may exist, which, if it were not so, would certainly be news to the inhabitants of the Louisiana intrastate region of Acadiana.

Put differently, Bojangles' alleges that Hardees' marketed and sold a chicken biscuit with Cajun spices. Bojangles' does not allege that Hardees' sold a *Bojangles' Cajun Spiced Chicken* biscuit or used the phrase "*It's Cajun Spiced*" in marketing the product. Moreover, the offending product does not contain beans, so the registered mark on "*Cajun Pintos*" is irrelevant. Accordingly, there was no infringing use related to marks other than "Gotta" and "Cajun Filet Biscuit."

Plaintiff also alleges claims for unfair trade practices and vicarious and contributory infringement. (#6) at 13-14. Such claims are predicated on a finding of trademark infringement or a finding that the products were deceptively similar. It simply cannot be that a single company has a monopoly on putting a piece of Cajun spiced chicken between two sides of a biscuit. Further inquiry is needed as to whether the products were deceptively similar and the ultimate issue of whether one or more trademarks were infringed. Before the court gets a bite at this further evidence, it cannot conclude that the plaintiff is likely to prevail in this chicken biscuit suit.

-8-

### ii. Likelihood of Irreparable Harm

The second factor asks whether the movant is likely to suffer irreparable harm if injunctive relief is not granted. The court cannot so find, especially as the defendants have agreed to stop marketing the offending product within two months and has already stopped using the allegedly infringing "Gotta" statement. (#14) at 1.

Even if "irreparable injury regularly folllows from trademark infringement," adequate evidence of irreparable injury would aid the court. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995). Other than the presumption that trademark infringement leads inevitably to irreparable injury, the plaintiff has not provided further evidence of injury. (#6) at 15.On the other hand, defendants have shown that any harm is likely not irreparable. It will no longer use one of the offending marks and additional use of the allegedly infringing mark will cease in a few weeks, without court involvement. Additionally, the actual infringement is questionable, as discussed above, as the showing of trademark infringement—the necessary predicate for the plaintiff's presumption—may be lacking.

Accordingly, the court finds that the plaintiff cannot show a likelihood of irreparable harm if a TRO is not granted.

### iii. Balance of Hardships

According to its filings, plaintiff does not want the defendants to stop selling any and all spiced chicken biscuits but instead asks the court to enjoin the defendants from using the allegedly infringing marks to identify or promote the biscuit. (#6) at 16. As noted above, the defendants have agreed to remove the product from the market altogether and have already ceased use of the offensive "Gotta" phrase. (#14) at 1.

The court appreciates the importance of the Cajun chicken sandwich to the business model of Bojangles'. A cursory glance at the menus of these quick-service restaurants indicates that biscuits with Cajun spiced chicken are quite important at Bojangles' restaurants. Plaintiff further asserts that it "has been using the Cajun marks every hour of every day for at least the past 30 years and specifically selling the Cajun Filet Biscuit, one of its most popular menu items, continuously during those years." (#15) at 7.

Even so, the offending product is likely to leave the market within weeks. The advertising of the offending biscuit will end within days. (#14) at 5. Further, defendant is willing to refrain from reintroducing the product during the pendency of this lawsuit, effectively instituting the relief sought through the TRO without the involvement of the court. (#14) at 7. Further, the removal of the offending "Gotta" phrase and biscuit product suggests that injunctive relief is unnecessary but does not preclude a potential finding of monetary damages. The court reserves future decision in the unlikely event defendants revoke any commitments related to the offending products. If that were to occur, plaintiff may make an appropriate motion for the court's review.

In the end, injunctive relief would have the practical effect of stopping sales of this product before September 2017. It is currently late July 2017. A denial of immediate injunctive relief would mean approximately two additional months of sale of a competitor's chicken biscuit product. The immediate nature of plaintiff's harm is unclear to the court, other than a presumed harm from presumed infringement. As noted earlier, the "Gotta" phrase has already been removed. Understanding that the supply chain for food products has longer logistical lines than promotional materials, the practical nature of the remaining risk is low here as the offending product will be leaving the market within weeks.

####        iv.  Public Interest

The public interest is served in denying the TRO. While the public has an interest in fair competition and the avoidance of consumer confusion, there are no indicia that confusion actually exists in the marketplace. It would be folly to think that anyone would go to Hardee's expecting to purchase a biscuit product identical to that served at Bojangles'. The public also has an interest in efficient and effective use of judicial resources. Each of these parties are sophisticated, national businesses, and this dispute appears to have already been handled to a certain extent without the involvement of the court. Imposing the exceptional relief of a TRO in the absence of specific evidence of harm would not be in the public's best interest.

####        v.  Conclusion

Upon review of the appropriate Rule 65 factors, the court finds that immediate injunctive relief is unwarranted. The plaintiff has not demonstrated the need for immediate relief. At this point, which is without the benefit of discovery, the plaintiff is also unlikely to succeed on the merits of its claim, particularly with regard to the "Cajun Filet Biscuit" mark.

### III.    Motion for Discovery and Scheduling Order

As noted above, further evidence is necessary to demonstrate whether an infringement has occurred and its resultant harm. To that end, additional discovery would be beneficial for the efficient resolution of this dispute. Defendants have proposed a timeline for expedited discovery. (#14) at 3-4. Plaintiff objects. See (#15)

Given the timeline of the product's removal from the marketplace, a speedy discovery process would be helpful for the prompt resolution of this dispute. The public and the parties themselves would be served if these two quick-service restaurants were able to expeditiously move

-11-

through the discovery process and especially if they could resolve this matter without trial. The court acknowledges that certain information related to this dispute may require a protective order. (#15) at 7 n. 4.

Given that plaintiff alleges that the limited time promotion of this product until September 2017 will cause it irreparable harm, an expeditious discovery process would be useful. Requests for expedited discovery are evaluated in a number of ways, including the assessment of factors such as

> "the procedural posture of the case, whether the discovery requested is narrowly tailored, whether the party seeking the information would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference, and whether the information sought would be unavailable or subject to destruction in the absence of expedited production."

Me2 Prods., Inc. v. Does 1-16, No. 4:16-CV-279-FL, 2016 WL 7017268, at *1 (E.D.N.C. Dec. 1, 2016) (citing Chryso, Inc. v. Innovative Concrete Sols. of the Carolinas, LLC, No. 5:15-CV-115-BR, 2015 WL 12600175, at *3 (E.D.N.C. 30 June 2015)).

Plaintiff argues that injunctive relief should not be delayed by discovery. (#15) at 6. It asserts that expedited discovery would "merely provide[] Defendants with the full opportunity to complete its [limited time offer] sales period while causing continued irreparable harm to Plaintiff." Further, plaintiff argues that "delay due to expedited discovery will permit Defendants to realize the full value of [its] infringing acts and deny Plaintiff an opportunity to stop resulting the irreparable harm." These arguments are not persuasive for the same reasons discussed above in regards to the TRO.

Rule 26 allows for expedited discovery and indicates that expedited discovery may be appropriate when a party requests preliminary injunctive relief. See F.R.C.P. 26(d) and comments thereto. Understanding the nature of trademark infringement suits, tools such as consumer surveys

take time. The court appreciates that plaintiff does not want the defendants to stop selling any and all spiced chicken biscuits, but instead asks the court to enjoin the defendants from using the allegedly infringing marks to identify or promote the spicy biscuit. (#6) at 16. The court is unconvinced that the potential harm resulting from continued sale of a "Cajun Chicken Biscuit" during the time it will take for discovery and resolution of the request for preliminary injunction outweighs the need for discovery.

The court will permit limited expedited discovery as to "Cajun Chicken Biscuit" mark for the purposes of a hearing on a preliminary injunction as to the labeling of this product. The permitted discovery shall be limited to the chicken biscuit mark and to potential utility of injunctive relief. As the parties are now engaged, plaintiff has the opportunity to constructively propose identification for this allegedly infringing menu item. Defendants have already switched the name of this product and dropped the offending "Gotta" phrase from its promotion. A hearing within thirty days will allow the parties some time for expedited limited discovery and an opportunity to review further proposed name changes for the offending item.

**IV. Conclusion**

Ultimately, a TRO is an extraordinary remedy. The court is no chicken when it comes to imposing such relief when it is necessary. Upon review of the applicable factors, the court cannot find that a TRO is appropriate at this point. While injunctive relief may become appropriate as the case progress, there is neither sufficient evidence of the breach of the operative mark related to Cajun spiced chicken biscuits nor the attendant harm suffered from the purported infringement.

Even so, the court will allow the opportunity for limited expedited discovery for thirty (30) days in preparation for a hearing on a preliminary injunction. This discovery shall be limited to

-13-

the chicken biscuit mark, the utility of a preliminary injunction, and proposed changes to the "Cajun Chicken Biscuit" name.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for a Temporary Restraining Order (#5) is **DENIED** and defendants' Motion for Discovery and Scheduling Order (#13) is **GRANTED**, in part, and **DENIED**, in part, as limited expedited discovery shall be permitted in preparation for a hearing on the Motion for Preliminary Injunction (#5). The discovery shall be limited to the "Cajun Filet Biscuit" mark, proposed menu name changes for the Cajun chicken biscuit, and the utility of a preliminary injunction.

**FURTHER, IT IS ORDERED** that a hearing shall be **CALENDARED** in no less than thirty (30) days on plaintiff's Motion for Preliminary Injunction (#5).

Signed: July 19, 2017

Max O. Cogburn Jr
United States District Judge